**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| JEANINE KOCON, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:06-CV-13-PRC |
| | ) | |
| LAKE COUNTY SHERIFF'S | ) | |
| DEPARTMENT and LAKE | ) | |
| COUNTY COMMISSIONERS, | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

This matter is before the Court on (1) a Motion for Summary Judgment by the Defendant Lake County Sheriff's Department [DE 20], filed on March 30, 2007, and (2) a Defendant Lake County Commissioner's Motion for Summary Judgment [DE 21], filed on March 30, 2007. For the reasons set forth below, the Court grants Defendant Lake County Commissioner's Motion for Summary Judgment and grants in part and denies in part Defendant Lake County Sheriff's Department's Motion for Summary Judgment.

**PROCEDURAL AND FACTUAL BACKGROUND**

Many of the facts underlying this lawsuit, as stated by the parties in their summary judgment filings, are in dispute. This lawsuit began on December 13, 2005, when Ms. Kocon filed a Complaint in the Lake County Superior Court, alleging that the Lake County Sheriff's Department ("LCSD") and the Lake County Commissioners ("LCC") (collectively "Defendants") falsely imprisoned and unlawfully confined her, violated her 42 U.S.C. § 1983 civil rights, violated her rights under the Indiana Constitution, and intentionally inflicted emotional distress upon her. The basis for Ms. Kocon's claims is her contention that a Lake County Superior Court Judge ordered her to be released from confinement from Lake County Jail on January 9, 2004, and that Defendants did

not release her until January 23, 2004.  Ms. Kocon also alleges that Defendants treated her in a cruel manner during her incarceration.

Ms. Kocon's incarceration in Lake County Jail began on December 15, 2003, when she was arrested and processed for a probation violation.  Ms. Kocon contends that on January 7, 2004, an unidentified sheriff's officer gave her an envelope bearing the return address of Lake County Superior Court Judge Sheila Moss.  Ms. Kocon alleges that the envelope contained a copy of an order, signed by Judge Moss and Court Clerk Thomas Philpot, stating that Ms. Kocon would be released from jail on January 9, 2004.  Ms. Kocon alleges that she showed the order to her cellmates and called her brother to make sure he would be there to pick her up on January 9, 2004.

Ms. Kocon filed a copy of an envelope with the Court which bears the return address of Judge Sheila M. Moss, and is addressed to Jeanine Kocon, Lake County Jail.  Ms. Kocon also filed a copy of an order dated January 9, 2004, and signed by a Judge whose signature appears to be that of Sheila Moss.  The Order states:

> Cause submitted on Defendant's Motion to Reconsider Sentence.  Court considers same and grants Defendant's Motion, orders Defendant released and resets cause for hearing on Petition to Revoke on the 23rd day of January, 2004 at 9:00 a.m.

Def.'s Br. Ex. 3.   The order bears a stamp in the lower right corner stating that it was filed in open court, and was signed by Thomas R. Philpot, Clerk Lake Circuit Court.

When January 9, 2004, came and went without her release, Ms. Kocon asserts that she began showing the order to corrections officers and asking why she was still in custody.  Ms. Kocon alleges that no matter who she spoke with, nothing was done to release her.  Ms. Kocon asserts that she repeatedly told every corrections officer she came into contact with that she should have been released.  Ms. Kocon contends that when she appeared in court at her next court date on January 23,

2004, in her green prison uniform, Judge Moss remarked, "why is she here in her greens?  She should have been released."  Pl.'s Br. at 3.  Ms. Kocon was released later that day.

Defendants argue that no order for the release of Ms. Kocon dated January 9, 2004, exists. Defendants contend that when a Lake County Court issues an order for the release of an inmate from Lake County Jail, a court bailiff physically carries a bailiff's log book and a green case action sheet to the Lake County Jail records department for processing.  The jail staff acknowledge receipt of a court-issued release by signing their initials in the bailiff's log book.  Defendants state that the log book used by the bailiff in Judge Moss's courtroom reflects that one release order for Ms. Kocon was delivered to Lake County Jail on January 23, 2004, and that Ms. Kocon was released that day.

As part of their discovery, the parties deposed Kimberly Parker.  Ms. Parker testified that she is in charge of the records office at the Lake County Jail and is responsible for making sure that any order sent to her office is followed.  Ms. Parker testified that it is common procedure for someone in her office to sign the bailiff's log book upon receiving a green sheet ordering a prisoner's release. Ms. Parker seemingly used the terms "order" and "green sheet" interchangeably.  But these are in fact two different documents.  The order is a court-issued order to release an inmate, and the green sheet is the paper brought to the jail by the judge's bailiff, which the jail then processes and uses as the basis for an inmate's release.  Ms. Parker stated that the court bailiffs deliver green sheets to the records department in person.  Ms Parker explained that green sheets are either signed by a judge or the judge's bailiff.  Ms. Parker testified that her office then releases inmates based on the green sheets alone and never sees the actual court order.  Ms. Parker explained that she will not release an inmate until she receives the green sheet.

Ms. Parker testified that an order for an inmate's release would normally be kept in the inmate's jail jacket and that no order dated January 9, 2004, was found in Ms. Kocon's jail jacket. Ms. Parker testified that an order for Ms. Kocon's release, dated January 23, 2004, was found in her jail jacket. Ms. Parker testified that sometimes green sheets are also faxed to her office and then a hard copy is sent later. Ms. Parker testified that no order to release Ms. Kocon on January 9, 2004, was brought or faxed to her office. Ms. Parker explained that she searched for such an order but never found one.

Ms. Parker testified that she would not release an inmate if someone gave her a copy of an order purporting to be a release order but that she would call the judge and inquire about the inmate's status. Ms. Parker testified that inmates can send mail to her office and that her office follows up on every piece of correspondence it receives from inmates. Mr. Parker was unsure whether inmates were told that they can correspond with the records office.

Ms. Kocon also alleges that her medical well-being suffered while she was in jail. Ms. Kocon asserts that corrections officers did not give her certain necessary medication and did not permit her to use her cane, which she needed due to a preexisting back injury. Ms. Kocon alleges that her anxiety medication was brought to the jail the first night she was incarcerated but corrections officers did not let her use it for a week. Ms. Kocon states that her cane was kept downstairs where the jail staff kept prisoner belongings.

Ms. Kocon alleges that as a result of her treatment in Lake County Jail, her preexisting back injury worsened. Ms. Kocon states that she was unable to use her cane and walked with a limp, which hurt her back. Ms. Kocon states that her back injury worsened to such a degree that she required the assistance of a wheelchair to travel to her January 23, 2004, court appearance.

4

On January 11, 2006, LCSD filed a notice of removal in the United States District Court for the Northern District of Indiana, Hammond Division.  On June 14, 2006, Ms. Kocon filed a Motion for Partial Summary Judgment and a Memorandum in Support.  On August 4, 2006, LCSD filed a response.  Ms. Kocon did not file a reply in support of her motion.  On October 2, 2006, the Court issued an order and opinion denying Ms. Kocon's Motion for Partial Summary Judgment.

On March 30, 2007, Defendants each filed a motion for summary judgment. On April 27, 2007, Ms. Kocon responded with a single response brief.  On May 11, 2007, Defendants filed a joint reply in support of their motions.  The parties consented to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case.  Thus, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "[S]ummary judgment is appropriate-in fact, is mandated-where there are no disputed issues of material fact and the movant must prevail as a matter of law.  In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe. Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party may discharge its "initial responsibility" by simply "'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. When the non-moving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1526 (7th Cir. 1990).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) provides that "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts; the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v.*

*R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). A court's role is not to evaluate the weight of the evidence, to judge the credibility of the witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 447 U.S. at 249-50; *Doe*, 42 F.3d at 443.

## ANALYSIS

Defendants filed separate motions for summary judgment. The motions contain largely the same arguments. Ms. Kocon filed a single response to both motions and the Defendants filed a joint reply. The Court will consider and rule on the Defendants' motions for summary judgment jointly in this opinion.

Defendants contend that there are no issues of genuine fact that preclude summary judgment. LCC argues that it should be granted summary judgment as to all claims because Ms. Kocon's allegations and supporting evidence do not sufficiently establish that LCC committed unlawful acts against her. In addition, Defendants jointly assert four arguments: (1) Defendants are not subject to liability for Ms. Kocon's § 1983 claim; (2) Ms. Kocon's claims are barred by qualified immunity; (3) an order for the release of Ms. Kocon from the Lake County Jail was not issued until January 23, 2004; and (4) Ms. Kocon cannot recover punitive damages. Finally, LCC contends that Ms. Kocon failed to properly allege the state law causes of action asserted in her Complaint.

As an initial matter, the Court finds that LCC's arguments that Ms. Kocon failed to properly allege causes of action are untimely. LCC's arguments should have properly been filed as a Rule 12(b)(6) motion to dismiss. A motion to dismiss for failure to state a claim must be made before filing a responsive pleading, or in conjunction with an initial responsive pleading. *See* Fed. R. Civ. P. 12(b). Here, the time for LCC to file a motion to dismiss for failure to state a cause of action has

passed and the Court will not consider LCC's arguments that Ms. Kocon failed to state certain claims. Instead, the Court will examine the Defendants' arguments pursuant to the Rule 56 standard for summary judgment and consider the pleadings, as well as depositions, answers to interrogatories, and admissions on file, together with affidavits to determine whether a genuine issue of material fact exists.

## I. Allegations against LCC

LCC argues that it should be awarded summary judgment as to all claims because Ms. Kocon has failed to point to any policy that LCC enacted or any action that LCC committed or failed to commit that caused her alleged injuries. LCC argues that Ms. Kocon has not introduced any evidence that establishes a connection between her allegations and the County Commissioners. In support of its argument, LCC cites an excerpt from Ms. Kocon's deposition testimony. At her deposition, Ms. Kocon testified that she did not know any of the persons who are Lake County Commissioners and had no personal contact with those individuals. LCC also submitted the Affidavits of Lake County Commissioners Frances Dupey and Gerry Scheub. In relevant part, Mr. Dupey and Mr. Scheub state that they have first hand knowledge that:

4. The Lake County Commissioners have no authority over the release or confinement of persons under the jurisdiction of Lake Superior Courts in the Lake County Jail.

5. The Lake County Commissioners have no authority over the standard operating procedures of employees within the Lake County Sheriff's Department and Lake County Jail including the release, treatment, or confinement of persons incarcerated in the Lake County Jail.

6. [We were] never contacted, either directly [or] indirectly, by Lake County Sheriff Dominguez, or any other member of the Lake County Sheriff's Department, concerning the Plaintiff Jeanine Kocon, nor have [we] had any contact with the Plaintiff, Jeanine Kocon.

> 7.    [The] Lake County Commissioners have not had a meeting or
> communications regarding the Plaintiff, Jeanine Kocon, her incarceration in
> the Lake County Jail, or any matters pending in the Lake Superior Courts,
> nor has the Lake County Commissioners taken an action, official or
> otherwise, concerning the Plaintiff, Jeanine Kocon.

(Dupey Aff. ¶¶ 4-7, Scheub Aff. ¶¶ 4-7).

In response, Ms. Kocon alleges that "Defendants" put in place an express or implied policy that resulted in her unlawful detainment for fourteen days. Ms. Kocon's Complaint makes no allegations with regard to LCC's role in the alleged policy. LCC's only appearance in the Complaint, by name, is in the caption. The Complaint alleges that LCSD wrongfully confined Ms. Kocon and unlawfully failed to release her on January 9, 2004, but nowhere does it explain LCC's role in these actions.

In her response brief, Ms. Kocon alleges that "[t]he Sheriff's Department is an arm of the County Commissioners." Pl.'s Br. at 13. This statement is the extent of the detail that Ms. Kocon uses to explain her theory of LCC's involvement in this matter. Ms. Kocon's statement that LCSD is an arm of LCC is a bare allegation. At this stage of the proceeding, a bare allegation is not sufficient to sustain the cause of action. *See Celotex*, 477 U.S. at 324 (where a nonmoving party bears the burden of proof at trial on a dispositive issue, the nonmoving party must respond to a motion for summary judgment by going beyond the pleadings, and by her own affidavits, depositions, answers to interrogatories, and admissions on file, and designate specific facts showing that there is a genuine issue for trial).

Ms. Kocon is unable to offer any evidence to support her theory that LCC played a role in the wrongs allegedly committed against her. Supporting evidence is required to maintain a claim at this stage of the proceeding. *See id*. LCC supported its motion for summary judgment with the

affidavits of two County Commissioners, stating that they had no involvement in Ms. Kocon's incarceration. Ms. Kocon has not provided any evidence to refute the Commissioners' affidavits. As a result, the Court finds that the pleadings, depositions, answer to interrogatories, and admissions on file, together with affidavits, do not establish that LCC committed any unlawful acts against Ms. Kocon. Thus, the Court grants LCC's motion for summary judgment as to all claims.

## II.  Section 1983 liability

Defendants next argue that they should be awarded summary judgment on Ms. Kocon's § 1983 claim. LCSD argues that it is not an entity subject to § 1983 liability, and in the alternative, along with LCC, argues that Ms. Kocon has failed to submit sufficient evidence to survive summary judgment on her § 1983 claim. Having already granted summary judgment in favor of LCC as to all claims presented by Ms. Kocon, the Court evaluates LCC's argument regarding the sufficiency of Ms. Kocon's § 1983 claim and other arguments asserted by LCC in future sections of this opinion briefly and only in the interest of fully examining the parties' contentions.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that he or she was (1) deprived of a federal right, privilege, or immunity (2) by a person or government entity acting under color of state law. *See Racine Charter One, Inc. v. Racine Unified School Dist.*, 424 F.3d 677, 680 (7th Cir. 2005) (referred two as the two prong *Monell* test). The United States Supreme Court held that a local government unit is a "person" as defined by § 1983, and can be held liable under the statute when its lawmakers or those whose acts may fairly be said to represent official policy, execute government policy or custom which deprives a person of a federal right, privilege, or immunity. *See Monell v. Dept. of Social Services of City of NY*, 436 U.S. 658, 694 (1978). A local government entity cannot be held liable pursuant to a respondeat superior theory. *Id*. at 691-694.

10

Rather, it must be shown that the constitutional deprivation occurs at the defendant government entity's "direction or with [its] knowledge and consent." *Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir. 1985).

> Three situations exist in which a local government entity violates a constitutional right:
>
> (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.

*Phelan v. Cook County*, 463 F.3d 773, 789 (7th Cir. 2006) (citing *Roach v. City of Evansville*, 111 F.3d 544, 548 (7th Cir. 1997)).  Ultimately, to prevail under the second prong of *Monell*, a plaintiff must show that through deliberate conduct, the local government agency was the "moving force" behind the alleged injury.  *Board of County Comm'rs of Bryan County, Ok. v. Brown*, 520 U.S. 397, 404 (1997).

Here, Ms. Kocon alleges that her Fourteenth Amendment right against deprivation of liberty without due process was violated when she was detained in Lake County Jail for fourteen days after she should have been released.  Ms. Kocon contends that the fourteen day unlawful detainment was a result of Defendants' practice or policy.  Ms. Kocon contends that Defendants at least had a widespread practice in place, if not an express policy, that caused her loss of liberty.  In response, LCSD contends that it is not a "person" subject to suit under § 1983.  LCSD relies on precedent at the Indiana state appellate court and federal district court levels to establish its contention.

In *Jones v. Bowman*, the United States District Court for the Northern District of Indiana considered whether a § 1983 plaintiff could sue the Office of the Sheriff of Elkhart County for an alleged unlawful week long detention and strip search.  694 F. Supp. 538 (N.D. Ind. 1988).  The

court began its analysis by stating that "a city's police department is merely a vehicle through which the city government fulfills its policy functions and is not a proper party defendant." *Id*. at 544 (citing *Boren by & Through Boren v. City of Colorado Springs*, 624 F.Supp. 474 (D.Colo. 1985); *Martinez v. Winner* 771 F.3d 424, 444 (10th Cir. 1985)).  The court reasoned that it could find no reason why a county sheriff's department would be an entity exposed to § 1983 liability when a city's police department is not.  *Jones*, 694 F.Supp. at 544.  Therefore, the court concluded that the Office of the Sheriff of Elkhart County was entitled to judgment as a matter of law on the plaintiff's § 1983 claim.  *Id*.

The United States District Court for the Southern District of Indiana, in *Curry v. Consolidated City of Indianapolis*, followed the same reasoning.  *See* OP 00-1534-C-T/K, 2002 WL 655705, at *5 (S.D. Ind. Feb. 27, 2002).  Considering whether the City of Indianapolis police department was a proper defendant to lawsuits in general, the court cited Indiana Code § 36-1-4-3 in finding that the police department has no corporate existence and is "merely a vehicle through which the city government fulfills its policy functions."  *Id*.  The court held that the city, not the police department, was a proper defendant.  *See id*.

In *Slay v. Marion County Sheriff's Department*, the Court of Appeals of Indiana, Fourth District arrived at the same conclusion.  603 N.E.2d 877 (Ind. Ct. App. 1992).  The court faced the question of whether the Marion County Sheriff's Department was liable under § 1983 for an alleged unlawful shooting by county sheriff's department officers.  The Court, relying on *Jones*, 694 F.Supp. 538, and *Rhodes v. McDaniel*, 945 F.2d 117, 120 (6th Cir. 1991), held that the plaintiff could not sustain a § 1983 claim against the Marion County Sheriff's Department.  *Slay*, 603 N.E.2d at 887.

Defendant, while relying on the above precedent, failed to acknowledge the recent decision of the United States District Court for the Northern District of Indiana in *Argandona v. Lake County Sheriff's Department*, No. 2:06cv259, 2007 WL 518799 (N.D. Ind. Feb. 13, 2007).  In *Argandona*, the court considered the same question facing this Court, whether the Lake County Sheriff's Department is an entity subject to suit under § 1983.  The plaintiff in *Argandona* sued the Sheriff's Department alleging that a § 1983 violation occurred when a Sheriff's Department officer stopped the plaintiff's vehicle and physically battered the plaintiff and prevented others from interfering by stating that he was conducting "police business."

The *Argandona* court, relying on the United States Supreme Court decision in *McMillian v. Monroe County, Alabama*, 520 U.S. 781, 786 (1997), which was notably decided three years after *Jones v. Bowman*, stated that in some cases a sheriff's department acts as an arm of the state and in other cases acts as an arm of the county.  The *Argandona* court noted that § 1983 immunity does not extend to a sheriff's department when it acts in a law enforcement capacity as an arm of the state.  *See Argandona,* 2007 WL 518799 at *4.  The court found that "it is clear that under Indiana law, when a sheriff performs a law enforcement function, he acts on behalf of the county and not the state." *Id.*   The court then relied on *Franklin v. Zaruba*, 150 F.3d 682, 686 (7th Cir. 1998), for the proposition that a third possibility exists, and that in some cases a county sheriff's office acts as an entity separate and apart from the state and the county, and has its own legal existence that makes it a suable entity.  *See Argandona*, 2007 WL 518799 at *4.   Ultimately, the court found that "the Lake County Sheriff's Department, when acting in its law enforcement capacity, is neither an arm of the State nor a mere extension of Lake County.  Rather, the Department is a separate municipal entity and subject to suit under § 1983." *Id*. at *5.

13

Here, the facts are distinguishable from those presented in *Argandona*. Ms. Kocon's allegations concern conduct of LCSD within Lake County Jail, a County facility, and in connection with the County court system. Thus, it would appear that Ms. Kocon's allegations target LCSD in its capacity as an extension or arm of Lake County. This is precisely the argument that LCSD endorses. However, Indiana law is contrary to LCSD's position. As explained in *Argandona*, the Lake County Sheriff's Department is an entity separate from the County and operates independently of the County Commissioners. *See* 2007 WL 518799 at *3 (citing *Donahue v. St. Joseph County*, 720 N.E.2d 1236, 1241 (Ind. Ct. App. 1999)). Moreover, the County has no agency relationship with the Sheriff's Department and the County cannot be held liable under a respondeat superior theory for the actions of the Sheriff's Department. *See Argandona*, 2007 WL 518799 at *3 (citing *Carver v. Crawford*, 564 N.E.2d 330, 334 (Ind. Ct. App. 1990). Thus, as a separate entity, acting in its law enforcement capacity, LCSD is an entity separate from the County and is subject to suit under § 1983.

Next, Defendants contend that Ms. Kocon has failed to establish the second prong of *Monell*. Defendants contend that Ms. Kocon has not introduced any evidence or support for her contention that Defendants put in place a policy or widespread practice that caused her alleged constitutional deprivation or were final decision makers responsible for her alleged constitutional deprivation. Although LCSD does not explicitly assert this argument in its motion for summary judgment, the argument is submitted by Defendants in their joint reply brief. In the reply brief, Defendants state that Ms. Kocon infers that a policy or widespread practice caused her allegedly delayed release but does not point to a single other incident at Lake County Jail involving a late release of an inmate. The Court agrees with Defendants' contention. Ms. Kocon has not produced any evidence that

14

Defendants had in place any policy or widespread practice to hold inmates in custody after they were ordered to be released, she only alleges that such a policy or practice exists.   At this stage of the proceeding, as noted earlier, Ms. Kocon must come up with evidence, going beyond the assertions contained in her pleadings, to support her claims and defeat the opposing motions for summary judgment.  The Court finds that Ms. Kocon's mere allegation that Defendants had in place a policy or widespread practice of confining inmates after their release date is insufficient to defeat summary judgment.  As a result, Defendants' motions for summary judgment are granted with regard to Ms. Kocon's claim of a § 1983 violation.

### III.  Qualified immunity

Defendants argue that they are shielded from Ms. Kocon's federal and state law claims by qualified immunity.  Ms. Kocon contends that Defendants are not protected by qualified immunity because they acted with knowledge that their actions violated her constitutional rights.

### A.  Qualified immunity against § 1983 claim

Defendants contend that they are shielded from § 1983 liability by qualified immunity.  However, in light of its finding in Section II above that Ms. Kocon cannot survive Defendants' motions for summary judgment as to her § 1983 claim, the Court declines the opportunity to consider the merits of this argument.

### B.  Qualified immunity against state law claims

Defendants contend that Indiana state statute provides them with qualified immunity against Ms. Kocon's state law claims of false imprisonment, cruel and unusual punishment, and intentional infliction of emotional distress.  Indiana Code § 34-13-3-3, a section of the Indiana Tort Claims Act ("ITCA"), provides that "[a] governmental entity or an employee acting within the scope of the

15

employee's employment is not liable if a loss results from . . . [t]he adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations), unless the act of enforcement constitutes false arrest or false imprisonment."  Ind. Code § 34-13-3-3.   Thus, to receive the protection of the ITCA's law enforcement immunity provision, a defendant must (1) be engaged in the enforcement of a law; and (2) act within the scope of employment.  If their conduct satisfies the two requirements listed above, law enforcement officers may be immune from liability pursuant to the ITCA when their conduct is intentionally tortious, and even when it is egregious and contrary to law.  *See City of Anderson v. Davis*, 743 N.E.2d 359, 365 (Ind. App. 2001).  However, the law enforcement immunity provision of the ITCA does not attach when a law enforcement officer engages in actions of false arrest or false imprisonment.  *See id*. at 364.

Here, Ms. Kocon alleges in Count I of her Complaint that Defendants falsely imprisoned her for fourteen days in Lake County Jail.  Section 34-24-3-1 of the ITCA provides that if a person suffers loss as a result of criminal confinement, the person may bring a civil action against the party who caused the loss for an amount not to exceed three times the actual damages, court costs, reasonable attorney's fees, expenses, and all other reasonable costs of collection.  *See* Ind. Code § 34-24-3-1.  Because false imprisonment is one of the listed exceptions to the law enforcement immunity provision of the ITCA, and Ms. Kocon alleges that Defendants, through their positions of employment falsely imprisoned her, Defendants are not protected by qualified immunity from Ms. Kocon's state law allegation of false imprisonment.

In addition to pleading false imprisonment, Ms. Kocon asserts the following state law claims: (1) that Defendants violated the Indiana Constitution's provision against cruel and unusual punishment by treating Ms. Kocon "with unnecessary rigor" while she was confined in jail; and (2)

that Defendants "intentionally, recklessly and/or negligently inflict[ed] severe and prolonged emotional distress upon the Plaintiff." *See* Pl.'s Compl. ¶¶ 16-17, 20.

To determine whether Defendants are shielded from these claims by the ITCA's protection of immunity, the Court must first examine whether they were engaged in "enforcement" of a law while committing the alleged wrongful actions. Ind. Code § 34-13-3-3. In *Mullin v. Municipal City of South Bend*, the court explained that "the scope of 'enforcement' is limited to those activities in which a government entity or its employees compel or attempt to compel the obedience of another to laws, rules or regulations, or sanction or attempt to sanction a violation thereof." 639 N.E.2d 278, 283 (Ind. 1994). Here, Defendants' actions at issue are encompassed within the broad definition of "enforcement." Defendants' jobs as they relate to Ms. Kocon's accusations are to enforce and execute the law, and specifically, to govern the conduct of prisoners housed at Lake County Jail. Defendants' conduct in providing for the care of prisoners and processing the release of prisoners is the type of conduct that the ITCA defines as enforcement of a law.

The Court must also examine whether the conduct at issued occurred "within the scope of the employee's employment." Ind. Code § 34-13-3-3. Ms. Kocon's allegations, combined with the evidence on record, show that Ms. Kocon's contentions of cruel and unusual punishment and intentional infliction of emotional distress, if committed, were committed by Defendants in the course of their employment. Ms. Kocon has not alleged or introduced any evidence that Defendants acted outside the scope of their employment in committing the alleged unlawful acts. Moreover, Ms. Kocon named agency defendants rather than individual defendants. By their organizational nature, agency defendants cannot easily operate outside the scope of the employment because the agency is the employer. The agency determines the boundaries of employment and therefore any

17

act it commits is arguably committed within the scope of employment.  The Court finds that Defendants acted within the scope of their employment, both in caring for Ms. Kocon and processing her release.

Finally, the Court must examine whether Ms. Kocon's claims fall within an exception to the ITCA's law enforcement immunity provision.  This requires a survey of Indiana law.  Specifically, the Court must determine whether the ITCA's exemption of immunity coverage for acts of false imprisonment and false arrest extends to other claims.  In *City of Anderson*, the court considered whether an exception for claims of negligence could be added as an additional exception to the immunity offered by the ITCA.  The plaintiff in *City of Anderson*, a city police officer, sued the city police department and another individual officer for injuries he sustained as a result of alleged negligence by the defendants in deploying a police dog to pursue a fleeing suspect.  The court held that because the plaintiff's injuries resulted from the defendant officer's release of the police dog, which constituted the enforcement of law in the scope of the defendant's employment, that the defendant city was immune from liability pursuant to the ITCA.  *See* 743 N.E.2d at 359.  The court thereby refused to add an exception to the ITCA's immunity coverage for a claim of negligence. The court also considered whether an allegation of excessive force may be exempt from the ITCA's immunity provision and reasoned that:

> The interpretation of the ITCA to include a free standing illegality or excessive force exception, without any explicit support in the Act itself, would appear to run afoul of the supreme court's admonition in *Benton* that "it is the legislature, and not the courts, that is in the best position to determine the nature and extend to which governmental units in Indiana should be insulated from tort liability."

*Id*. at 366, n. 4 (quoting *Benton v. City of Oakland City*, 721 N.E.2d 224, 232 (Ind. 1999)).

Based on the foregoing analysis of Indiana law, the Court does not read the ITCA to include

18

exemptions from its law enforcement immunity coverage for claims of cruel and unusual punishment and intentional infliction of emotional distress. Thus, the Court finds that Defendants are protected by the ITCA's qualified immunity provision against Ms. Kocon's state law claims of cruel and unusual punishment and intentional infliction of emotional distress. Defendants' motions for summary judgment are therefore granted with regard to those claims.

### IV.   The order for Ms. Kocon's release

The parties' factual assertions with regard to a court-issued order for Ms. Kocon's release from Lake County Jail are directly opposed. However, supporting documents attached to the parties' summary judgment briefs provide some clarity. The Court will examine each side's contention, and the documents in support, fully. Defendants assert that an order for Ms. Kocon's release was first issued on January 23, 2004, and that she was released from the Lake County Jail that day. Defendants attach several exhibits in support of this contention. First, Defendants point to the Affidavit of Kimberly Parker, who is in charge of the Lake County Jail records office. Ms. Parker represented that she performed a diligent search of the records of Lake County Jail and did not locate a January 9, 2004, court order for Ms. Kocon's release. Ms. Parker stated that the only order she found for Ms. Kocon's release was issued on January 23, 2004.

Defendants also rely on copies of two pages from the Lake County Jail bailiff's log book, which show one entry bearing Ms. Kocon's name. Defendants contend that the log book shows all release orders delivered to Lake County Jail and that this single entry represents the only date that an order for Ms. Kocon's release was issued. The entry is dated January 23, 2004.

Finally, Defendants attached a copy of the Lake County Superior Court docket sheet for the case of *State of Indiana v. Jeanine K. Kocon*, 45-DO8-0212-FD-00182. The docket sheet reflects

a January 23, 2004, entry granting Defendant's motion to reconsider and releasing Defendant. The previous entry before January 23, 2004, was on December 17, 2003, and states "closed." Def. Ex. 5. No January 9, 2004, entry is shown on the docket sheet.

In response, Ms. Kocon contends that on January 7, 2004, an unidentified sheriff's officer gave her a copy of an order signed by Judge Sheila M. Moss, ordering that Ms. Kocon be released on January 9, 2004. The order, which bears a January 9, 2004, date stamp and Judge Moss's signature, states that Ms. Kocon's motion to reconsider sentence is granted and Ms. Kocon is to be released. Ms. Kocon contends that this establishes "the undisputed fact . . . that Judge Moss ordered Kocon released on January 9, 2004." Pl.'s Br. at 6.

Considering both parties' versions of the facts surrounding Ms. Kocon's release, the Court finds that the date an order for Ms. Kocon's release was first issued and delivered or made available to Lake County Jail personnel remains at issue. The January 9, 2004, court order produced by Ms. Kocon, in and of itself creates an unresolved question of material fact in this case. Defendants' reliance on log book entries, the docket sheet, and Ms. Parker's testimony concerning the Lake County Jail rules and procedures and the fact that she never saw an order for Ms. Kocon's release dated January 9, 2004, fails to establish that no order was issued on January 9, 2004. There is a disconnect between the parties' versions of events. At present, it is not clear where the failure in processing paperwork or in the release procedures occurred, who was responsible, and for what department or agency the responsible party was employed or acting for. These are issues of material fact that remain unresolved.

## V.  Punitive damages

Attempting to limit any liability remaining after summary judgment, Defendants contend that

they are not liable for punitive damages for any of Ms. Kocon's claims.  Ms. Kocon did not assert an argument in favor of punitive damages remaining as a viable measure of damages in this matter. Having already determined that Defendants are not subject to Ms. Kocon's § 1983 claim, the Court will only examine Defendants' arguments that they are not subject to punitive damages for Ms. Kocon's state law claims.

Defendants contend that pursuant to the ITCA, Ms. Kocon is barred from recovering punitive damages on her state law claims.  Section 34-13-3-4 of the Indiana Code, titled "Limitation on aggregate liability; punitive damages prohibited," states: "[a] governmental entity or an employee of a governmental entity acting within the scope of employment is not liable for punitive damages." Ind. Code § 34-13-3-4.  Governmental entities are not subject to punitive damages because the punitive policies of deterrence and to punish acting with a specific state of mind are not applicable to a state action, which is not undertaken with any state of mind.  *See State v. Denny*, 406 N.E.2d 240, 241 (Ind. 1980).

Both LCSD and LCC are "governmental entities" as defined by the ITCA.  *See Greathouse v. Armstrong*, 616 N.E.2d 364, 365 (Ind. Ct. App. 1993) (finding Sheriff's Department's actions constituted discretionary functions for which the ITCA provides governmental immunity); *Gonser v. Board of Com'rs for Owen County*, 378 N.E.2d 425, 426-27 (Ind. Ct. App. 1978) (holding that board of county commissioners were within the purview of the ITCA).  As discussed earlier in this opinion, Ms. Kocon's allegations state that Defendants acted unlawfully in their scope of employment.  Thus, LCSD and LCC are not subject to punitive damages for Ms. Kocon's state law claims.

**CONCLUSION**

For the foregoing reasons, the Court **GRANTS** the Defendant Lake County Commissioner's Motion for Summary Judgment [DE 21], and **GRANTS IN PART AND DENIES IN PART** the Motion for Summary Judgment by the Defendant Lake County Sheriff's Department [DE 20]. The Court **GRANTS** Lake County Sheriff's Department's Motion for Summary Judgment with respect to Ms. Kocon's claims under 42 U.S.C. § 1983 and the Indiana Constitution, and her claim of intentional infliction of emotional distress.   Only Ms. Kocon's state law claim for false imprisonment against LCSD remains pending in this matter.   Punitive damages are not a viable measure of recovery for Ms. Kocon's remaining claim.

SO ORDERED this 29th day of June, 2007.


s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:     All counsel of record